## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **ALTON G. SMITH JR., et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **No.: 20-2336-MMM** |
| | ) | |
| **KANKAKEE COUNTY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### <u>MERIT REVIEW – AMENDED COMPLAINT</u>

Co-Plaintiffs Flynn Dean, Alton G. Smith, Jr., Charles Garcia-Berrios, Philip Buroff, Willie Jones, Lacteci Porch, and Joe Hertzog, all proceeding *pro se*, had filed a complaint and, prior to the complaint undergoing merit review, obtained leave to file an amended complaint. At the time of filing, all Plaintiffs were pretrial detainees at the Kankakee County Detention Center ("KCDC"). Since then, Plaintiff Smith has been released from custody. Plaintiffs assert claims against Kankakee County, the Kankakee County Sheriff's Office, Sheriff Michael Downey, Chief of Corrections Chad Kolitwenzew, , Officers Kimery and Liaromatis, Nurse Rebecca Wagner and Medical Providers Shannon Haggard and Nicholas Cannataro. Plaintiffs assert constitutional claims of deliberate indifference and inhumane conditions of confinement; as well as state law claims of negligence, willful and wanton misconduct, intentional infliction of emotional distress, negligent infliction of emotional distress, respondeat superior, and "indemnification," that the State indemnify Defendants.

The complaint is now before the Court for purposes of a merit review. In reviewing the complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "'state a claim for relief

that is plausible on its face.'" *Alexander v. U.S.*, 721 F.3d 418, 422 (7th Cir. 2013)(citation omitted).

## ALLEGATIONS

At the time relevant to this complaint, the seven co-Plaintiffs were housed on the KCDC 2NW housing unit. Plaintiffs allege that an unidentified number of detainees at KCDC had contracted COVID-19 and that Defendants Downey and Kolitwenzew did not take adequate safety measures to prevent the spread of the infection. Plaintiffs complained that they were kept in crowded conditions sharing sinks, toilets, showers, phones, mops and brooms; and did not have supplies to disinfect items between use. Plaintiff's also claim that 6-foot distancing was not observed.

The seven co-Plaintiffs allege that from October 25, 2020 through November 1, 2020, they each made complaints of the lack of precautions to staff members including Defendant correctional officers Kimberly and Liaromatis, and Defendant Nurse Wagner. Plaintiffs allege that they all began experiencing symptoms of fever, sore throat, dry cough, fatigue, body aches, breathing difficulty, loss of taste and smell. When they reported these symptoms, Defendant Kemery accused them of "faking" while Defendant Liaromatis made no response whatsoever. When Defendant Wagner was told, she instructed Plaintiffs to fill out sick call slips. When Plaintiffs asked to be seen by a physician, Defendant Wagner responded that there was nothing she could do as a physician "won't be coming to this jail for a while."

On November 4 or 5, 2020, Plaintiffs Jones and Porch experienced high temperatures and were moved to a different housing unit. There, they tested positive for COVID-19. The same happened to several other 2 NW residents but apparently not to the other co-plaintiffs.

Plaintiffs identify Defendants Haggard and Cannataro only as "medical providers." They indicate, without stating the basis for this belief, that Defendants Haggard and Cannataro "intentionally and deliberately" did not return to KCDC for two months out of fear of exposure to the virus. On December 1, 2020, Plaintiff Smith and Barrios were seen by Defendants Cannataro and Wagner but were denied COVID testing.

Plaintiff asserts that as a result of these conditions, they were feel fearful for their lives, health, safety and welfare and that they suffered physical and psychological pain, including "anxiety/hypochondriac." Plaintiffs also plead state law claims of willful and wanton misconduct, negligence, negligent infliction of emotional distress, intentional infliction of emotional distress, a respondeat superior claim and a claim for indemnification. Plaintiffs requests declaratory and injunctive relief, compensatory and punitive damages and fees and costs.

Plaintiffs also appear to assert a class action, alleging that they bring this case on behalf of all currently detained at KCDC and all who might be detained in the future. While each Plaintiff may represent himself, as a non-lawyer he may not represent anyone other than himself. *See* 28 U.S.C. §1654; *Lewis v. Lenc-Smith Mfg. Co.*, 784 F.2d 829, 830 (7th Cir. 1986)(per curiam). In this case, Plaintiffs are not qualified to act as a representative for others and cannot meet one of the requirements for class certification provided in Fed. R. Civ. P. 23(a), that "the representative parties will fairly and adequately protect the interests of the class." *Barnes v. Brown County,* 2014 WL 1663423 *5 (E.D. Wis., April 25, 2014); *Oxendine v. Williams,* 509 F.2d 1405, 1407 (4th Cir. 1975)(it was plain error to permit an inmate proceeding pro se to represent fellow inmates in a class action). Any class action purportedly raised in the complaint is dismissed.

3

**ANALYSIS**

Plaintiffs assert that the failure to allow for social distancing and adequate sanitizing of communal items violated their Fourteenth Amendment and various state law rights. As Plaintiffs are civil detainees, their deliberate indifference claims arise under the Due Process Clause of the Fourteenth Amendment, rather than the Cruel and Unusual Punishments Clause of the Eighth Amendment. *Darnell v. Pineiro*, 849 F.3d 17 (2nd Cir. 2017). A different standard applies as, while convicted prisoners may be subjected to punishment short of cruel and unusual, detainees may not be punished at all. *Miranda v. County of Lake*, 900 F.3d 335, 2018 WL 3796482, at *9 (7th Cir. 2018). Under the Fourteenth Amendment standard, a detainee need only establish that defendant's conduct was objectively unreasonable, that Defendants "knew, or should have known, that the condition posed an excessive risk to health or safety" and "failed to act with reasonable care to mitigate the risk." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2nd Cir. 2017). This standard is higher than that required to prove negligence, or even gross negligence and is "akin to reckless disregard." *Miranda*, 900 F.3d at 353.

To state a conditions of confinement claim, Plaintiffs need to sufficiently allege that Defendants exposed them to conditions which were objectively unreasonable, that is, "not reasonably related to a legitimate goal" or " arbitrary or purposeless." This is so, as in such a case it may be inferred that defendants acted to impermissibly "punish" the detainee. *Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019). Here, Plaintiffs complain of a lack of social distancing as they were held in close quarters. They also claim that they were required to share common items and did not have adequate cleaning supplies with which to sanitize items after each use.

These allegations as plead, do not support the inference that Defendants acted to punish Plaintiffs. It has been recognized that exposure to COVID and even the development of COVID infection does not impute a constitutional violation. *Burnette v. Schmaling*, No. 20-1792, 2021 WL 1192362, at *2 (E.D. Wis. Mar. 30, 2021) (quoting *Coates v. Arndt*, No. 20-1344, 2020 WL 6801884, at *1–2 (E.D. Wis. Nov. 18, 2020) ("[t]he plain fact is that the country is experiencing a pandemic and cases of COVID-19 are breaking out in prisons and communities across the country." "[E]ven though housing inmates in close quarters and staff not wearing masks at all times may not be ideal practices, 'the challenges of managing [the pandemic] in a correctional setting are astronomical.'" *Burnette* 2021 WL 1192362, at *2 quoting *Mayfield v. Peissig*, No. 20- 269, 2020 WL 3414757, at *2 (W.D. Wis. June 22, 2020) (finding lack of social distancing and inconsistent mask wearing did not amount to inhumane conditions of confinement).

As to the failure to provide adequate supplies for sanitizing common objects, the Court is mindful that at points in the pandemic, it has been difficult or impossible to secure PPE and sanitizing products. *See Burnette* 2021 WL 1192362, at *2 (finding that due to the lack of availability, it was not unreasonable when staff "preserved resources and only gave sanitizer to those individuals who had court appearances." *Id*. (denying claim for detainee who developed COVID at the jail**)**. Here, again, Plaintiffs do not plead an objectively unreasonable response nor evidence of punishment. In addition, Plaintiffs do not plead sufficient detail as they do not indicate the types of cleaning products which were available to them, how they were able to secure them, the amounts which were provided, and how the amounts were inadequate. Plaintiffs will be given an opportunity to replead this claim within 30 days.

Plaintiffs also allege a deliberate indifference claim in that they were not seen by "medical providers" Haggard and Cannataro. Here, it is unclear why Plaintiffs wished to be seen

by these providers when they apparently had some regular contact with Nurse Wagner. Plaintiffs

claim to have experienced a myriad of COVID-like symptoms, but do not allege that Defendant

Wagner denied them treatment for these symptoms. There is no deliberate indifference in the fact

that Defendant instructed Plaintiffs to submit sick call slips when told of their symptoms. *See*

*Scott v. Rector*, No. 13-16, 2014 WL 5861333, at *7 (S.D. Ill. Nov. 12, 2014) citing *Poole v.*

*Isaacs,* 703 F.3d 1024, 1026, 1027 (7th Cir.2012) (no deliberate indifference in requiring

plaintiff to follow institution's sick call procedures). If, in fact, Defendant Wagner refused them

treatment, Plaintiffs must plead so with some specificity as to the symptoms they each related to

her, when they made the complaints, and the responses each received.

Plaintiffs will be given leave to file a second amended complaint, consistent with the

instruction provided by this Court. The Court must, however, question the practicality of this

multi-plaintiff case. Proceeding with this number of *pro se* Plaintiffs presents some significant

obstacles. "A prisoner litigating on his own behalf takes the risk that one or more of his claims

may be deemed sanctionable under Fed.R.Civ.P. 11, or may count toward the limit of three weak

*forma pauperis* claims allowed by § 1915(g). A prisoner litigating jointly under Rule 20 takes

those risks for *all* claims in the complaint, whether or not they concern him personally. Sharing

works both ways; detriments as well as costs are parceled out among plaintiffs." *Boriboune v.*

*Berge*, 391 F.3d 852, 854–55 (7th Cir. 2004). *See also*, *Felton v. Sheriff*, No. 19-00662, 2019

WL 2644244, at *2 (S.D. Ill. June 27, 2019) (discussing multiple plaintiff litigation). "[I]f the

Court finds that the Complaint contains unrelated claims against unrelated defendants, those

unrelated claims may be severed into one or more new cases, each of which involves an

additional filing fee obligation and the risk of a "strike" within the meaning of 28 U.S.C.

§ 1915(g). Plaintiffs may wish to consider *Boriboune* and the afore-mentioned factors in determining whether to assume the risks of group litigation."

In addition, all seven co-plaintiffs will be required to individually sign each motion, response, reply, or notice filed in this case and serve a copy of each submission "on every other plaintiff and the opposing parties pursuant to Federal Rule of Civil Procedure 5. This means that if there are two plaintiffs, the plaintiffs' postage and copying costs for filing motions, briefs, or other papers will be twice as much as that of a single plaintiff." *Clark v. Pritzker*, No. 20- 01133, 2020 WL 6391185, at *8–9 (S.D. Ill. Nov. 2, 2020). *See id*. warning plaintiffs that "future group motions or pleadings that do not comply with this requirement shall be stricken pursuant to Rule 11(a)." This is particularly difficult in a jail setting where co-plaintiffs may be sent to different facilities or, as is the case here, where one has been released from custody.

The District Court must, however, "accept complaints filed by multiple prisoners if the criteria of permissive joinder are satisfied." *Boriboune v. Berge*, 391 F.3d 852, 855 (7th Cir. 2004). "Federal Rule of Civil Procedure 20 permits plaintiffs to join together in one lawsuit if they assert claims "arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to these persons will arise in the action." *Nelson v. Wexford Healthcare Providers*, No. 19- 00482, 2019 WL 3946092, at *3 (S.D. Ill. Aug. 21, 2019) citing *Boriboune*, 391 F.3d at 854.

The seven Co-Plaintiffs will be allowed to proceed, at least at this juncture, after having been suitably warned. Plaintiffs are informed that they may elect to drop out of the litigation should they wish. *See Clark*, 2020 WL 6391185, at *8–9 citing *Boriboune* at 856. "[T]he Seventh Circuit suggested in *Boriboune* that district courts alert prisoners to the individual payment requirement, as well as the other risks prisoner *pro se* litigants face in joint *pro se*

litigation, and "give them an opportunity to drop out." If any Plaintiff seeks to drop out, he is to inform the Court in writing and to file an individual complaint which will be severed into a new action, with responsibility for the additional filing fee.

As Plaintiff's federal claims have been dismissed with leave to replead, the Court does not address the multiple state court claims pled here. This is so as, if the constitutional claims do not survive, the Court will not exert supplemental jurisdiction over the state law claims. *See Willis v. Talbot*, No. 13-2193, 2013 WL 6677332, at *5 (C.D. Ill. Dec. 18, 2013) citing *Groce v. Eli Lilly & Co.,* 193 F.3d 496, 501 (7th Cir. 1999). "The Seventh Circuit has explained that, generally, district courts should dismiss, without prejudice, supplemental state law claims once all of the federal claims have been dismissed."

**IT IS THEREFORE ORDERED:**

1.      Plaintiffs' amended complaint is dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A. Plaintiffs will have 30 days from the entry of this order in which to replead their claims consistent with the instruction provided in this order. The pleading is to be captioned Second Amended Complaint and is to include all of Plaintiffs' claims without reference to a prior pleading. Failure to file a second amended complaint will result in the dismissal of this case, without prejudice, for failure to state a claim.

2.      If any Plaintiff seeks to drop out of this litigation, he is to inform the Court, in writing, within 21 days.

  4/28/2021                                     s/Michael M. Mihm
ENTERED                                      MICHAEL M. MIHM
                                             UNITED STATES DISTRICT JUDGE